## W. G. CLARK v. THE STATE.

No. 14628.  Delivered January 27, 1932.
Rehearing Denied March 2, 1932.

The opinion states the case.

*W. A. Anderson,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Under an indictment for murder, the appellant was convicted of an assault with intent to murder, and his punishment assessed at fifteen years in the penitentiary.

This case grew out of the same facts which were before this court in (Texas Crim. App., unreported), 27 S. W. (2d) 211. On a former

appeal by this appellant the case was reversed and remanded because of the failure of the indictment to charge the killing was done with malice aforethought and because of a conviction for murder with punishment of thirty-five years.

It appears that after the reversal of the case, a new indictment was found and it was upon this new indictment that the prosecution was based. There are no bills of exception in the record. No exceptions are taken to the court's charge or to the admissibility of any evidence. The only matter appearing in the record is the allegation on the motion for new trial touching on newly discovered evidence and the affidavits of the newly discovered witnesses.

The facts are briefly as follows: The former wife of the deceased testified that the appellant, who had formerly boarded with them, came to her house and asked for her husband; that her husband walked out of the house and he and the appellant engaged in a conversation; that she continued her work and remained in the house for a short time; that she went to the door to pour some water out and saw them talking and saw the appellant shaking his fist in her husband's face; that she went out there where they were in the back yard, a few feet from the back door, and the first thing she heard was that appellant said, "I am going right now and see that you lose your job"; that her husband said, "All right, go ahead, if you can make me lose it, I haven't got much of a job," and her husband then said to the appellant, "What is the matter with you any way, you know I am not going to beat you out of that 2.80"; that a discussion then arose as to why the appellant had quit boarding with the deceased. After they had some words about it, the appellant shook his fist in deceased's face and asked him if he wanted to fight; that her husband answered, "No, I don't want to fight, but I am not afraid of you. I don't think you are such a bully as you make out like any way"; that the appellant then advanced upon the deceased with his knife. It was a large knife, she couldn't say how long the blade was and couldn't say how far the deceased backed away from the appellant; that the appellant caught hold of the deceased and deceased was trying to get away from him; that she was holding the appellant's arm and trying to get him off and the appellant at that time was cutting the deceased with his knife; that deceased had nothing in his hand at the time; he didn't have any kind of weapon in his hand or about his person; that while the appellant was cutting the deceased, she said, "Please don't, you are killing him," and begged him to quit, but he didn't. That the deceased's father then came out to the yard and he shoved the appellant away from the deceased and then the appellant started cutting the old gentleman with his knife; that her husband then, when he got loose, ran to the end of the house and picked up a piece of iron and came back; that at the time he came back, the appellant was cutting the deceased's father; that he had cut his

sweater in several places, deep enough to make blood come, and while he was cutting the deceased's father, the deceased struck the appellant and after the deceased struck the appellant a Mr. Blalock came out into the yard and got hold of the appellant and jerked him back and said, "That is enough of that," and there was not any more fighting after that.

A doctor testified that the deceased died from the wounds inflicted upon him. The defense was self-defense. The appellant did not testify, but offered several eye-witnesses to the difficulty that tended to show a killing in self-defense.

In support of appellant's motion for new trial upon the ground of newly discovered evidence, he attaches the affidavits of T. L. Mountry, who resides in Taylor County, Texas, and W. Kirk of New Orleans, Louisiana. He alleges that he expected to prove by the witness, T. L. Mountry, that he was present at McCamey and saw the difficulty between the defendant and the deceased, and that he saw the defendant on the ground and saw E. A. Birdwell, deceased, beating defendant over the head and that he saw an old man stomping and kicking defendant and that he saw Dan Birdwell trying to cut defendant's throat, and that during the fight said Dan Birdwell lost his knife and ran into the house and that afterwards Dan Birdwell stated to said witness and to Sam Norman that if Clark had not been so strong he would have cut Clark's head off instead of Clark's hand. Substantially to the same effect is the allegation as to the witness W. Kirk.

The defendant alleged in said motion, as to the materiality of said testimony, that the first time he knew Dan Birdwell would deny that he was present and participated in the fight was when he testified in the trial of this case and that the testimony of the two witnesses, whose affidavits are attached to his motion for new trial, contradicts the testimony of the state's main witness, Mrs. Marie Labay, and the other witness, Dan Birdwell, and the elder Dan Birdwell, and alleges that said testimony came to his knowledge since the trial and conviction in this case. He further states that the names of said witnesses and the facts that they would so testify were unknown both to the defendant and to his counsel before the trial of this case. That he had no means of so learning until after his conviction in this case; that the only means by which he and his counsel discovered the names of said witnesses and the facts to which they would testify was that after said witnesses had read of the defendant's conviction in this case they voluntarily stated to persons friendly to the defendant's counsel the facts set out in the affidavits.

The record in this case shows that the indictment in this case was filed in the district court of Upton county on October 10, 1930; that on the same day the appellant made application for change of venue and by agreement the venue of said case was changed to Reagan county, Texas, on Janary 1, 1931. The record shows that on April 15, 1931, the case

was called for trial and both sides announced ready for trial. There is no showing made as to what diligence was shown by the appellant to ascertain that the witnesses were present at the time of the difficulty. There is no showing made that with ordinary diligence he might not have ascertained their presence at the time of the difficulty. In addition thereto, the alleged newly discovered evidence consists merely of additional facts and circumstances going to establish the same points which were controverted before, and the alleged newly discovered witnesses would have testified, if present at the trial, substantially to the same facts and circumstances testified to by the witnesses for the appellant on the trial of the case.

That in passing upon a motion for new trial based upon alleged newly discovered evidence, the trial court is vested with the soundest discretion which is not to be overturned on appeal in the absence of abuse is a fixed principle in the law of this state. Miller v. State, 112 Texas Crim. Rep., 606, 18 S. W. (2d) 632; Burns v. State, 12 Texas App., 269; Coleman v. State, 108 Texas Crim. Rep., 323, 300 S. W., 59; Runnels v. State, 101 Texas Crim. Rep., 434, 276 S. W., 289. Branch's Penal Code, sec. 192, lays down the following rule: "To warrant a new trial on the ground that new testimony has been discovered since the trial it is incumbent on defendant to satisfy the court that the new testimony has come to his knowledge since the trial and that it was not known beforehand, and it must be such as reasonable diligence could not have secured at the former trial; it must be competent, material to the issue, and probably true, going to the merits and not merely cumulative or collateral nor merely to impeach a former witness; and it must appear that it is reasonably probable that it will change the result." West v. State, 2 Texas App., 209; Duval v. State, 8 Texas App., 370; White v. State, 10 Texas App., 167; Ferguson v. State, 66 Texas Crim. Rep., 426, 147 S. W., 239; Green v. State, 66 Texas Crim. Rep., 446, 147 S. W., 593; McGaughey v. State, 74 Texas Crim. Rep., 529, 169 S. W., 289.

We believe no reversible error is shown in the refusal of the trial court to grant appellant's motion for new trial.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have again considered carefully the newly discovered evidence as contained in the two affidavits appended to appellant's motion for new trial, but are more than ever convinced of the

fact that said testimony was purely cumulative of that of the various eye-witnesses introduced by appellant upon the trial, in which case we are not allowed under all our authorities to reverse for the refusal of a new trial sought upon this ground.

We confess ourselves not quite able to comprehend the other ground urged in appellant's motion for rehearing. Appellant was on trial upon an indictment charging murder, and the court below saw fit to submit the law of assault to murder, together with lower degrees of assault, in his charge. Upon appropriate facts the trial court should follow this course. We find no exception taken to the charge referred to. In charging upon the law of assault to murder, the court fully instructed the jury that before they could convict, the evidence must establish that the assault was with malice aforethought. This seems to be entirely proper. We perceive no error in the action of the court in submitting the law of assault to murder, or in the jury finding appellant guilt of that offense and assessing the penalty given herein.

The motion for rehearing will be overruled.

*Overruled.*

Morrow, P. J., absent.